UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLIFFORD COKE,

    Plaintiff,

v.                                  Case No.:  3:20-cv-1024-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Clifford Coke seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.  **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

   A.  **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

   B.  **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits and for supplemental security income benefits on April 11, 2018, alleging disability beginning February 1, 2018. (Tr. 18, 88, 89, 232-260). The applications were denied initially on June 6, 2018, and upon reconsideration on September 10, 2018. (Tr. 88, 89, 120, 121). Plaintiff requested a hearing and on August 14, 2019, a hearing was held before Administrative Law Judge M. Hart. (Tr. 38-65). On March 11, 2020, the ALJ entered a decision finding Plaintiff not under a disability from February 1, 2018, through the date of the decision. (Tr. 15-24).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on July 30, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on September 11, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 17).

### D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2019. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2018, the alleged onset date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "history of

chronic respiratory disorders, lung nodules, and spine disorders" (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §§] 404.1567(c) and 416.967(c) except he can lift or carry 50 pounds occasionally, and lift or carry 100 pounds occasionally. He can frequently climb ladders, ropes, scaffolds, ramps, and stairs. He can tolerate occasional exposure to pulmonary irritants such as dusts, odors and fumes.

(Tr. 18).

The ALJ found Plaintiff unable to perform any past relevant work as a welder. (Tr. 22-23). At step five, the ALJ relied on the testimony of a vocational expert and interrogatories to the vocational expert to find that considering Plaintiff's age (53 on the alleged onset date), education (marginal education), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 23-24). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1) industrial cleaner, DOT 381.687-018,[1] medium, unskilled, SVP 2

(2) laundry worker, DOT 361.684-014, medium, unskilled SVP 2

(3) kitchen helper, DOT 318.687-010, medium, unskilled, SVP 2

(Tr. 23-24). The ALJ concluded that Plaintiff had not been under a disability from February 1, 2018, through the date of the decision. (Tr. 24).

## II.   Analysis

On appeal, Plaintiff raises two issues: (1) whether the ALJ improperly considered[2] the medical evidence; and (2) whether the ALJ improperly classified the testimony of the vocational expert. (Doc. 20, p. 6-10). The Court will address each issue in turn.

### A.   Whether the ALJ properly considered the medical evidence of record

Plaintiff argues the ALJ erred in not considering the records of Anand Kuruvilla, M.D., one of Plaintiff's treating physicians. (Doc. 20, p. 7). Plaintiff also contends that the ALJ erred in finding persuasive the opinions of State agency medical consultants Tatiana Barsukova, M.D. and Sunita Patel, M.D. because they did not review the more recent records. (Doc. 20, p. 7). Likewise, Plaintiff argues

---

[1] "DOT" refers to the Dictionary of Occupational Titles.

[2] Plaintiff frames the first issue by using the term "weighed" in the context of the ALJ improperly "weighed" the medical evidence and then used the term "weight" throughout the discussion. (Doc. 20, p. 6-7). As the Court discusses in this section, for applications filed after March 27, 2017 – like this application – the Commissioner considers the persuasiveness and supportability of the opinion, as well as other factors. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

that consultative examiner John Foster, M.D. did not have the benefit of a January 2020 CT scan and the ALJ erred by relying on his opinion without requesting an update from Dr. Foster after review of this record. (Doc. 20, p. 8-9).

### 1. Dr. Kuruvilla

Plaintiff argues the ALJ erred by not considering the records and opinions of Dr. Kuruvilla, who is one of Plaintiff's treating physicians. (Doc. 20, p. 7). The Court finds no error.

At step four, the task of determining a claimant's RFC and ability to work rests with the administrative law judge and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016). For disability cases filed after March 27, 2017, a new standard applies for considering medical opinions. *See* 20 C.F.R. § 404.1520c. The Commissioner no longer defers or gives any specific evidentiary weight, including controlling weight, to any medical opinion or prior medical finding. 20 C.F.R. § 404.1520c(a). Instead, the Commissioner considers the medical opinions together using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant – including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)1-5. The most important

factors considered to determine the persuasiveness of the medical opinions or prior administrative medical findings are supportability and consistency. 20 C.F.R. § 404.1520c(a).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

Plaintiff claims that in August 2019, Dr. Kuruvilla opined that Plaintiff suffered from a pleural effusion which causes fatigue, shortness of breath, persistent cough, and pain. (Doc. 20, p. 7 (citing Tr. 746-49)). Plaintiff continues: "It is the elements of pain and fatigue that are consistent with the Plaintiff's testimony and the notation that the [P]laintiff would get winded that calls into question the [P]laintiff's ability to perform medium work or any other sustained activity." (Doc. 20, p. 7). The Commissioner argues that Dr. Kuruvilla did not give such an opinion and even if he

did, under the new regulations Dr. Kuruvilla's alleged statements that Plaintiff suffered from a pleural effusion, which causes fatigue, shortness of breath, persistent cough, and pain do not constitute medical opinions under the new regulations. (Doc. 25, p. 14-15). While Dr. Kuruvilla found Plaintiff suffered from pleural effusion, the August 2019 records do not reflect that this diagnosis caused fatigue, shortness of breath, persistent cough, and pain as Plaintiff claims. (*Compare* Doc. 20, p. 7; *with* Tr. 746-49). Nor do these records indicate Plaintiff would get "winded." (Tr. 746-49).

In the decision, the ALJ thoroughly considered Dr. Kuruvilla's records from August 29, 2019 and January 21, 2020. (Tr. 20, 21, 22, 746-49, 781-85). The ALJ noted that the August 2019 record showed Plaintiff was stable, although imaging showed increases in Plaintiff's right-sided pleural thickening and pleural effusion. (Tr. 20, 22, 746-49). The ALJ also noted Plaintiff experienced mild pain and that his KPS% score[3] was 90, which indicates he was able to carry on normal activity with minor signs and symptoms of the disease. (Tr. 20, 22). The ALJ reviewed Dr. Kuruvilla's January 21, 2020 evaluation, which occurred after the January 17, 2020 CT scan. (Tr. 21, 22, 781). The ALJ acknowledged that Dr. Kuruvilla found the

---

[3] The "KPS [Karnofsky Performance Status]%" score is "[a] standard way of measuring the ability of cancer patients to perform ordinary tasks. The KPS scores range from 0 to 100. A higher score means the patient is better able to carry out daily activities. KPS may be used to determine a patient's prognosis, to measure changes in a patient's ability to function, or to decide if a patient could be included in a clinical trial." https://www.cancer.gov/publications/dictionaries/cancer-terms/def/kps

imaging showed increases in Plaintiff's lung lesions, but otherwise was essentially stable in its findings. (Tr. 21). The ALJ noted that the physical examination demonstrated generally normal findings with no respiratory distress, clear to auscultation and percussion, normal bilateral breathing sounds, normal cardiovascular findings, normal extremities, and normal speech. (Tr. 21, 778, 795). The ALJ also noted that Plaintiff's KPS% score was 80, meaning he was capable of normal activity with effort and had some signs or symptoms of the disease. (Tr. 21, 783).

The ALJ thoroughly considered and accurately reviewed Dr. Kuruvilla's records. The ALJ also considered the evidence as a whole, including evidence favorable and unfavorable to the decision in determining Plaintiff's RFC. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Court recognizes that it may not reweigh the evidence or substitute its judgment for that of the ALJ. *Id.* The Court finds the ALJ's consideration of Dr. Kuruvilla's records is supported by substantial evidence.

### 2. Dr. Barsukova, Dr. Patel, Dr. Foster

Plaintiff asserts that the ALJ erred in finding the June and September 2018 opinions of State agency medical consultants Dr. Barsukova and Dr. Patel persuasive. (Doc. 20, p. 7). Plaintiff argues that significant medical treatment and diagnostic testing occurred after these opinions were rendered, and these medical

consultants did not have the benefit of these additional records, which showed a worsening of Plaintiff's condition. (Doc. 20, p. 7). Plaintiff argues the ALJ should not have relied on these opinions to find that Plaintiff could perform a range of medium work when they did not have the benefit of these updated records. (Doc. 20, p. 7). Plaintiff adds that these updated evaluations, additional treatment, and additional diagnostic testing would reduce Plaintiff's RFC. The Court finds no error.

In evaluating the State agency medical consultants' opinion, the ALJ found them well supported and longitudinally consistent with the other substantial evidence of record that Plaintiff is capable of performing medium exertional level jobs as discussed in the decision. (Tr. 22). The ALJ then references the more recent medical records when finding:

> Notwithstanding the claimant's history of pleural effusion/thickening, his physical exams generally document essentially unremarkable respiratory findings and his spirometric pulmonary function tests confirm no acute respiratory illness, but with diffused capacity, no obstruction, and suggestion of mild restriction (Exhibits 8F, 10F through 16F, 18F, 20F, 23F, and 24F).[4]

(Tr. 22). Although these medical consultants did not have the benefit of the more recent records, the ALJ did consider their opinions in light of the more recent medical records in determining that their opinions were persuasive. Moreover, it is the ALJ's task to determine a claimant's RFC and his ability to work and not that of

---

[4] "23F" and "24F" are the records from August 2019 and January 2020. (Tr. 781-806),

the doctors. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). The Court finds the ALJ's decision is supported by substantial evidence when finding the opinions of Drs. Barsukova and Patel persuasive.

### 3. Dr. Foster

Plaintiff argues that the ALJ did not fully develop the record. (Doc. 20, p. 9). Plaintiff claims that the ALJ should have recontacted consultative examiner Dr. Foster to obtain an updated opinion after review of the January 2020 CT scan and medical records. (Doc. 20, p. 8-9). In these updated records, Plaintiff contends that the worsening of the lung lesion and suspecting the lesion is malignant require an updated opinion. (Doc. 20, p. 9).

A plaintiff bears the burden of proving he is disabled and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Even so, "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record." *Id. See* 20 C.F.R. §404.1545(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). To remand a case because of an ALJ's failure to fully develop the record, the claimant must show that his right to due process has been violated to such an extent that the record contains evidentiary

gaps, which resulted in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018).

When considering Dr. Foster's opinion, the ALJ found it consistent with the records and reports obtained by Plaintiff's treating physicians as well as supported by the evidence as a whole in establishing an ability to perform a reduced range of medium exertion work. (Tr. 22). As discussed above, the ALJ thoroughly considered Dr. Kuruvilla's August 2019 and January 2020 records as well as the January 2020 CT scan when determining Plaintiff's RFC. (Tr. 20-22). And it is the ALJ's task – not the doctor's – to determine the RFC. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Plaintiff has not shown that these more recent medical records establish that Plaintiff has limitations other than those included in the RFC. Plaintiff also has not shown any evidentiary gaps in the record that resulted in unfairness or clear prejudice. Considering the evidence as a whole, the Court finds the ALJ fulfilled her duty to develop the record.

### B. Whether the ALJ improperly classified the testimony of the vocational expert

Plaintiff argues that the ALJ erred in listing jobs that Plaintiff could perform. (Doc. 20, p. 9-10). At the hearing, the vocational expert testified that a person with Plaintiff's limitations could perform the jobs of dietary aid, dining room attendant, and kitchen helper. (Doc. 20, p. 9; Tr. 60). However, in the decision, the ALJ found Plaintiff capable of performing the jobs of industrial cleaner, laundry worker, and

kitchen helper. (Tr. 24). The only overlapping job is the kitchen helper job. (Tr. 60, 24). Plaintiff concedes that the number of jobs in the national economy for kitchen helper "is a substantial number of jobs." (Doc 20, p. 10).

While Plaintiff is correct that the ALJ did not adopt the jobs listed by the vocational expert at the hearing, the ALJ cited interrogatories from the vocational expert in support of her findings. (Tr. 24). In interrogatories dated December 23, 2019 (approximately four months after the hearing), the vocational expert responded to the question of whether an individual described in the hypothetical provided (which matches Plaintiff's RFC) could perform any unskilled occupations with jobs that exist in the national economy. (Tr. 388). The vocational expert responded, yes, and listed the jobs of industrial cleaner, laundry worker, and kitchen helper. (Tr. 389). The ALJ adopted these jobs in the decision and found these jobs exist in significant numbers in the national economy. (Tr. 23-24). The Court finds no error or if the ALJ erred, the error was harmless because the ALJ found Plaintiff was capable of performing the kitchen helper job, and Plaintiff concedes that there are a significant number of these jobs in the national economy. *See Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (finding harmless error if the ALJ lists jobs that a plaintiff is not capable of performing as long as the ALJ lists a job that the plaintiff is capable of performing and there are a significant number of this job in the national economy).

## III.     Conclusion

For the reasons stated, the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on October 27, 2021.

                                                                  *Douglas N. Frazier*
                                                                  DOUGLAS N. FRAZIER
                                                                  UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties